ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III ESPECIAL

| | | |
|---|---|---|
| PREMIER COMPUTER, INC.<br><br>Apelado<br><br>v.<br><br>MUNICIPIO DE SAN JUAN<br><br>Apelante | KLAN202301049 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm.: K CD2015-0597<br><br>Sobre: Incumplimiento de contrato, cobro de dinero |

Panel integrado por su presidente, el Juez Figueroa Cabán, la Juez Brignoni Mártir y el Juez Ronda del Toro

**Figueroa Cabán, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico a 19 de agosto de 2024.

Comparece el Municipio de San Juan, en adelante MSJ o apelante, y solicita que revoquemos una *Sentencia* emitida el 9 de agosto de 2023, notificada y archivada en autos el 15 de agosto de 2023, por el Tribunal de Primera Instancia, Sala de San Juan, en adelante TPI.[1] Mediante el referido dictamen, el foro de instancia declaró ha lugar la *Moción de Sentencia Sumaria* que presentó Premier Computer, Inc., en adelante Premier o apelado, y ordenó al MSJ a satisfacer la cantidad de $6,559,292.36, en concepto de principal e intereses.

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

---

[1] Apéndice del apelante, págs. 7624-7645.

Número Identificador

SEN2024_____

**-I-**

El 11 de marzo de 2015, Premier presentó una *Demanda* contra MSJ por incumplimiento de contrato y cobro de dinero.[2] Reclamó el pago de $6,218,046.30, por servicios alegadamente prestados y no pagados por concepto de facturación y cobro de servicios médico-hospitalarios provistos por distintas entidades médicas del apelante, correspondientes al periodo de julio de 2010 hasta enero de 2014. Alegó que la deuda estaba vencida, era líquida y exigible, por lo que solicitó su pago inmediato, más intereses, costas y honorarios de abogado.

Mediante su *Contestación a Demanda, Defensas Afirmativas y Reconvención*, el apelante negó las alegaciones y levantó como defensas afirmativas, entre otras, que las facturas reclamadas por el apelado no son válidas o sobrepasan los límites presupuestados para los contratos en pugna.[3] Además, señaló que los contratos no son válidos; que no fueron inscritos en la Oficina del Contralor de Puerto Rico; y que son contrarios al orden público. Finalmente, reconvino por el monto de $6,118,939.42, por Premier presuntamente haber prestado servicios defectuosos contrario a sus obligaciones contractuales.[4]

Posteriormente, MSJ presentó *Contestación Enmendada a Demanda, Defensas Afirmativas y Reconvención*.[5] En esta ocasión, aceptó la existencia y el otorgamiento de los contratos suscritos con Premier. No obstante, alegó que este último incumplió con su obligación contractual de facturar servicios

---

[2] *Id.*, págs. 1-13.
[3] *Id.*, págs. 14-20.
[4] *Id.*
[5] *Id.*, págs. 21-29.

médicos, lo que generó pérdidas millonarias que exceden la cuantía reclamada originalmente. Debido a ello, subió a $12,000,000.00 el monto de la reconvención.

En desacuerdo, Premier presentó una *Moción para Ofrecer Contestación a Reconvención Enmendada*, en la que negó las alegaciones de MSJ. Sostuvo que no incumplió con sus obligaciones contractuales. A su vez, aseguró que todos los servicios que le brindó al apelante fueron autorizados por el apelado. En consecuencia, solicitó la desestimación de la reconvención y reiteró su solicitud de cobro de dinero, más intereses, costas y honorarios de abogado.[6]

Tras varias incidencias procesales innecesarias pormenorizar para adjudicar la controversia ante nuestra consideración, el apelado presentó una *Moción de Sentencia Sumaria* […].[7] En ella, reiteró que la deuda por la suma de $6,218,046.30 era líquida, vencida y exigible. Ello así, debido a que las facturas sometidas por el apelado fueron reconciliadas, validadas y no pagadas por la parte apelante. Por consiguiente, solicitó que se dictara sentencia a su favor en la que se ordenara el pago de lo adeudado, más intereses legales y honorarios de abogados por temeridad. En la alternativa, pidió se emitiera una sentencia parcial a su favor por la cantidad de $3,750,750.96, más honorarios de abogado e intereses. En cuanto al remanente de $2,667,088.28, Premier solicitó que el tribunal emitiera

---

[6] *Id.*, pág. 7625.
[7] *Id.*, págs. 372-415.

determinaciones de hechos materiales y esenciales conforme surgen de su moción.

En su *Oposición a la Moción de Sentencia Sumaria de Premier Computer, Inc.*,[8] MSJ negó las alegaciones esbozadas por el apelado, así como la validez de los contratos. Sobre este particular, sostuvo que los acuerdos en pugna no contienen las firmas requeridas por ley para la contratación gubernamental. A su vez, afirmó que existen facturas pendientes que deben ser revisadas por un comisionado especial, por lo que el tribunal estaba impedido de adjudicar la controversia. También, cuestionó la validez del proceso de reconciliación de las cuentas presentado por Premier junto a su solicitud de sentencia sumaria. Por último, solicitó la desestimación de la demanda o, en la alternativa, que se declarara no ha lugar la petición de sentencia sumaria por existir controversias sobre la liquidez de las cantidades reclamadas por el apelado.[9]

Posteriormente, el apelado presentó *Réplica a Oposición a Moción de Sentencia Sumaria*[10], en la que adujo que MSJ no presentó oposición a su solicitud de forma oportuna y que al hacerlo obvió que se encontraba en rebeldía. A su vez, recalcó que el apelante admitió la validez de los contratos. Por tanto, exigió se le concediera el remedio solicitado en su petición sumaria.

Evaluadas las posiciones de las partes, el TPI emitió *Sentencia* en la que declaró Ha Lugar la *Moción de Sentencia Sumaria* […] de Premier y ordenó a MSJ

---

[8] *Id.*, págs. 7558-7579.
[9] *Id.*
[10] *Id.*, págs. 7580-7603.

pagarle la cantidad de $6,559,292.36, por concepto de principal e intereses.

Inconforme, el apelante presentó una *Solicitud de Reconsideración de Sentencia*[11], a la que se opuso Premier[12] y que el TPI declaró "No ha Lugar"[13].

Aún insatisfecho, MSJ presentó el recurso de epígrafe en el que señaló que el TPI cometió los siguientes errores:

> ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR SENTENCIA SUMARIA A FAVOR DE LA PARTE APELADA EN CLARA VIOLACIÓN DEL MANDATO DEL TRIBUNAL DE APELACIONES BAJO EL CASO KLCE2021-01557, QUE ORDENÓ LA DESIGNACIÓN DE UN COMISIONADO ESPECIAL PARA EVALUAR LA RECLAMACIÓN DEL APELADO Y ASÍ DETERMINAR LA CUANTÍA PRECISA QUE PUDIESE TENER DERECHO EL APELADO.
>
> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL MANTENER EL ESTADO DE REBELDÍA IMPUESTO AL MUNICIPIO DE SAN JUAN EN EL CASO.
>
> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR SENTENCIA SUMARIA CUANDO EXISTEN ELEMENTOS ESENCIALES EN CONTROVERSIA QUE IMPIDEN QUE EL ASUNTO PUEDA ADJUDICARSE SUMARIAMENTE.

Con el beneficio de la comparecencia de las partes, resolvemos.

-II-

A.

La sentencia sumaria es un mecanismo procesal extraordinario y discrecional, que tiene el propósito de facilitar la solución justa y rápida de los litigios y casos civiles que no presenten controversias genuinas de hechos materiales y que, por lo tanto, no ameritan la celebración de una vista en su fondo.[14] Se trata de un mecanismo para aligerar la tramitación de un caso, cuando de los documentos que acompañan la solicitud surge que no existe disputa

---

[11] *Id.*, págs. 7646-7663.
[12] *Id.*, págs. 7664-7703.
[13] *Id.*, págs. 7704-7705.
[14] *Aponte Valentín v. Pfizer Pharmaceuticals, LLC*, 208 DPR 263, 277-279 (2021); *Meléndez González, et als. v. M. Cuebas*, 193 DPR 100, 110-113 (2015); *Reyes Sánchez v. Eaton Electrical*, 189 DPR 586, 594 (2013); *Ramos Pérez v. Univisión de PR*, 178 DPR 200, 213 (2010).

sobre algún hecho material y lo que procede es la aplicación del derecho.[15]

Al respecto, la Regla 36.1 de Procedimiento Civil dispone que un reclamante debe "presentar una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada".[16]

El Tribunal Supremo de Puerto Rico, en adelante TSPR, ha declarado enfáticamente que quien se opone a una solicitud de sentencia sumaria tiene que ceñirse a ciertas exigencias en lo atinente a los hechos.[17] Esto es, recae sobre el oponente la obligación de citar específicamente los párrafos, según enumerados en el escrito de sentencia sumaria, que entiende están en controversia, y para cada uno, detallar la evidencia admisible que fundamenta su alegación, y especificar la página o sección de la evidencia que contradice o refuta el hecho.[18] Además, el oponente puede someter hechos materiales adicionales que alegadamente no están en controversia y que impiden la solución sumaria del conflicto.[19] De así hacerlo, tiene la responsabilidad de, al igual que el proponente, enumerar los hechos en párrafos separados e indicar la pieza de evidencia que sostiene el hecho, con

---

[15] *Aponte Valentín v. Pfizer Pharmaceuticals, LLC*, *supra*; *Meléndez González, et als. v. M. Cuebas*, *supra*; *Ramos Pérez v. Univisión de PR*, *supra*, pág. 214.

[16] Regla 36.1 de Procedimiento Civil de 2009 (32 LPRA Ap. V).

[17] *SLG Zapata-Rivera v. JF Montalvo*, 189 DPR 414, 432 (2013).

[18] *Id.*; Regla 36.3 (b)(2) de Procedimiento Civil de 2009 (32 LPRA Ap. V).

[19] *SLG Zapata-Rivera v. JF Montalvo*, *supra*.

KLAN202301049                                                              7

referencia específica a la parte de la evidencia que lo apoya.[20]

Cónsono con lo anterior, el TSPR ha insistido en que:

> La parte que se opone a una Moción de Sentencia Sumaria tiene el deber de presentar una Oposición a la solicitud presentada y de acuerdo con los requisitos de forma que exige la citada Regla 36 de Procedimiento Civil, traer a la atención del Tribunal la evidencia que demuestra que existen hechos materiales en controversia.[21]

De modo que:

> [L]a parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica, como lo haya hecho la parte promovente. [De lo contrario], se dictará la sentencia sumaria en su contra si procede.[22]

Finalmente, en *Meléndez González, et als. v. M. Cuebas, supra,* el TSPR estableció el estándar específico que debe utilizar el Tribunal de Apelaciones al revisar una sentencia sumaria:

> **Primero**, reafirmamos lo que establecimos en *Vera v. Dr. Bravo*, supra, a saber: el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la Regla 36 de Procedimiento Civil, *supra*, y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en el sentido de que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia y no puede adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo. La revisión del Tribunal de Apelaciones es una *de novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.
>
> **Segundo**, por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra*, y discutidos en *SLG Zapata-Rivera v. JF Montalvo*, supra.
>
> **Tercero**, en el caso de revisión de una Sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, *el foro apelativo*

---

[20] *Id.;* Regla 36.3 (b)(3) de Procedimiento Civil de 2009 (32 LPRA Ap. V).

[21] *Meléndez González, et als. v. M. Cuebas*, *supra*, pág. 122.

[22] Regla 36.3 (c) de Procedimiento Civil de 2009 (32 LPRA Ap. V).

*intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos.* Esta determinación puede hacerse en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.

**Cuarto**, y por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.[23]

**B.**

En nuestro ordenamiento jurídico, las obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitas en que intervenga cualquier género de culpa o negligencia.[24] Aquellas que nacen de un contrato tienen fuerza de ley entre las partes contratantes y sus causahabientes, y en consecuencia deben cumplirse a tenor de este.[25] Por su parte, los contratos son negocios jurídicos que existen desde que concurren los requisitos de consentimiento, objeto y causa.[26] Así pues, una vez las partes acuerdan mediante su consentimiento libre y voluntario, obligarse a cumplir determinadas prestaciones, surge entonces el contrato.[27]

De esta forma, se reconoce el principio de autonomía contractual, que significa que los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarios a las leyes, la moral y al orden

---

[23] *Meléndez González, et als. v. M. Cuebas*, *supra*, págs. 118-119. (Énfasis en el original).
[24] 31 LPRA sec. 2992. Como los contratos en controversia se constituyeron previo a noviembre 2020, están regulados por el Código Civil de 1930.
[25] 31 LPRA sec. 2994.
[26] 31 LPRA sec. 3391.
[27] 31 LPRA sec. 3371. Véase, además, *Amador v. Conc. Igl. Univ. De Jesucristo*, 150 DPR 571, 581-582 (2000).

público.[28]  En consecuencia, aquellos quedan vinculados al cumplimiento de todas las consecuencias jurídicas que surjan como parte de los acuerdos estipulados.[29] Por ende, la parte que se vea afectada por el incumplimiento de los términos pactados tiene en su haber exigir el cumplimiento específico de la obligación incumplida, o pedir la resolución del acuerdo y, en ambos casos, el resarcimiento de los daños causados.[30]

Ahora bien, en reclamaciones de cobro de dinero por motivo del incumplimiento de las obligaciones pactadas, "[e]l demandante s[o]lo tiene que probar que existe una deuda válida, que la misma no se ha pagado, que él es el acreedor y los demandados sus deudores".[31] Debe alegar además, que la deuda es líquida, está vencida y es exigible.[32]  Una deuda es "líquida" cuando la cuantía adeudada es "cierta" y "determinada"[33]; en cambio, "[l]a voz 'exigible' refiriéndose a una obligación, significa que puede demandarse su cumplimiento".[34]  Este concepto lleva ínsito el elemento de legalidad.[35]

En fin, al alegar que la deuda es líquida y exigible se declara que la cantidad reclamada ha sido aceptada como correcta por el deudor y que está

---

[28] 31 LPRA sec. 3372; *Amador v. Conc. Igl. Univ. De Jesucristo, supra*, pág. 582.
[29] *Jarra Corp. v. Axxis Corp.*, 155 DPR 764, 772 (2001).
[30] 31 LPRA sec. 3052; *Álvarez v. Rivera*, 165 DPR 1, 19 (2005); *Master Concrete Corp. v. Fraya, SE,* 152 DPR 616, 625 (2000).
[31] *General Electric v. Concessionaires, Inc.*, 118 DPR 32, 43 (1986).
[32] *Ramos y otros v. Colón y otros*, 153 DPR 534, 546 (2001); *Guadalupe v. Rodríguez*, 70 DPR 958, 966 (1950).
[33] *Ramos y otros v. Colón y otros, supra*, pág. 546; *Freeman v. Tribunal Superior*, 92 DPR 1, 25 (1965); MA del Arco Torres y M. Pons González, *Diccionario de Derecho Civil*, Tomo Segundo, pág. 168 (1984).
[34] *Carazo v. Srio. De Hacienda*, 118 DPR 306, 315 (1987); *Guadalupe v. Rodríguez, supra*.
[35] *Id*.

vencida.[36]  En cambio, para determinar su vencimiento se debe atender al carácter de la deuda, es decir, si es pagadera desde luego, como ocurre con las obligaciones puras y las sujetas a condición resolutoria, o por el contrario, si es pagadera cuando venza un plazo o se cumpla una condición, como ocurre en el supuesto de una obligación sujeta a condición suspensiva.[37]

### C.

La Regla 45.1 de Procedimiento Civil dispone que cuando una parte contra la cual se solicite una sentencia hubiera dejado de presentar alegaciones o de defenderse en otra forma, el Tribunal puede ordenar que se le anote la rebeldía por iniciativa propia o por solicitud de parte.[38] Esta disposición opera,

> cuando el demandado no cumple con el requisito de comparecer a contestar la demanda o a defenderse en otra forma prescrita por ley, y no presenta alegación alguna contra el remedio solicitado; o en las situaciones en que una de las partes en el pleito ha incumplido con algún mandato del tribunal, lo que motiva a éste a imponerle la rebeldía como sanción.[39]

La anotación de rebeldía tiene como propósito "[…] disuadir a aquellos que recurran a la dilación de los procedimientos como una estrategia de litigación".[40] Además, "[…] opera como remedio coercitivo contra una parte adversaria a la cual, habiéndosele concedido la

---

[36] *Ramos y otros v. Colón y otros*, *supra*.

[37] 31 LPRA 3222; J.R. Vélez Torres, *Derecho de Obligaciones*, Ed. 2da, 1997, págs. 220-221.

[38] Regla 45.1 de Procedimiento Civil de 2009 (32 LPRA Ap. V). Véase, además, *González Pagán v. Moret Guevara*, 202 DPR 1062, 1068-1069 (2019); *Bco. Popular v. Andino Solís*, 192 DPR 172, 179 (2015); *Correa v. Marcano*, 139 DPR 856, 861 (1996); *Imp. Vilca, Inc. v. Hogares Crea, Inc.*, 118 DPR 679 (1987); R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, pág. 327; J.A. Cuevas Segarra, *Tratado de derecho procesal civil*, 2da ed., San Juan, Pubs. JTS, 2011, T. IV, pág. 1338.

[39] *Ocasio v. Kelly Servs.*, 163 DPR 653, 670 (2005). Véase, además, *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 587-588 (2011).

[40] *González Pagán v. Moret Guevara, supra*, pág. 1069; *Rivera Figueroa v. Joe's European Shop*, *supra*, pág. 587; *Ocasio v. Kelly Servs.*, *supra*, pág. 671; Cuevas Segarra, *op. cit.*, pág. 1339.

oportunidad de refutar la reclamación, por su pasividad o temeridad opta por no defenderse".[41]

El efecto jurídico de la anotación de rebeldía es que se admiten como ciertos todos los hechos correctamente alegados en la demanda y la causa de acción podrá continuar dilucidándose sin que el demandado participe.[42] Sin embargo, el tribunal podrá dictar sentencia en rebeldía solo si concluye que procede la concesión del remedio solicitado.[43]

Por su parte, la Regla 45.3 de las de Procedimiento Civil autoriza al Tribunal a levantar una anotación de rebeldía cuando haya mediado causa justificada.[44] Tal doctrina está arraigada en la primordial política judicial de que los casos deben ventilarse en sus méritos.[45] Descansa en la sana discreción del Tribunal integrar dicho principio con el interés legítimo de que los pleitos se tramiten y finalicen en un término razonable.[46] En estos casos, debe considerarse si la parte afectada cuenta con una reclamación o defensa válida que oponer a la parte contraria, antes de tomar una disposición que tenga el efecto de privarla de su día en corte.[47]

Cuando en un caso existe la posibilidad de que la parte demandada cuente con una buena defensa y la reapertura del caso no ocasiona perjuicio alguno,

---

[41] *Id.; Álamo v. Supermercado Grande, Inc.,* 158 DPR 93, 101 (2002); *Continental Ins. v. Isleta Marina,* 106 DPR 809, 815 (1978); Cuevas Segarra*, op. cit.,* pág. 1338.
[42] *Id.; Bco. Popular v. Andino Solís, supra; Rivera Figueroa v. Joe's European Shop, supra,* pág. 588; *Correa v. Marcano, supra.* Véase, además, Hernández Colón, *op. cit.,* pág. 329.
[43] *Id.; Bco. Popular v. Andino Solís, supra; Ocasio v. Kelly Servs., supra,* pág. 671; *Continental Ins. v. Isleta Marina, supra.*
[44] Regla 45.3 de Procedimiento Civil de 2009 (32 LPRA Ap. V).
[45] *Negrón v. Srio. de Justicia,* 154 DPR 79, 93 (2001).
[46] *Fine Art Wallpaper v. Wolf,* 102 DPR 451, 457-458 (1974).
[47] *Pardo v. Sucn. Stella,* 145 DPR 816, 825 (1998); *Fine Art Wallpaper v. Wolff, supra,* pág. 459; *JRT v. Missy Mfg. Corp.,* 99 DPR 805, 811 (1971).

constituye un claro abuso de discreción el denegarla. Como regla general, una buena defensa debe siempre inclinar la balanza a favor de una vista en los méritos, a menos que las circunstancias del caso sean de tal naturaleza que revelen un ánimo contumaz o temerario por parte del demandado.[48]

Finalmente, en nuestro ordenamiento jurídico prevalece la tendencia a resolver las causas en sus méritos, siempre que con ello no se cause perjuicio verdadero a los demás litigantes, o dilación irrazonable en el procedimiento judicial.[49] Conforme lo anterior, el trámite en rebeldía desalienta el uso de la dilación como estrategia de litigación.[50] Sin embargo, por lo oneroso y drástico que resulta sobre la parte demandada una sentencia en rebeldía, se ha adoptado la norma de interpretación liberal, debiendo resolverse cualquier duda a favor de quien solicita se deje sin efecto la anotación de rebeldía, a fin de que el caso pueda verse en los méritos.[51] No obstante, conviene recordar que en procesos de esta naturaleza, los tribunales no son meros autómatas obligados a conceder remedios simplemente porque el caso está tramitándose en rebeldía.[52]

### -III-

Para MSJ el TPI abusó de su discreción al hacer caso omiso del mandato emitido por el Tribunal de Apelaciones en el caso KLCE2021001557 y no designar un

---

[48] *Román Cruz v. Díaz Rifas*, 113 DPR 500, 507 (1982); *JRT v. Missy Mfg. Corp.*, supra, pág. 811.
[49] *Ghigliotti v. ASA*, 149 DPR 902, 915 (1999).
[50] *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 587 (2011).
[51] *JRT v. Missy Mfg. Corp.*, supra, pág. 811.
[52] *Ocasio v. Kelly Serv.*, 163 DPR 653, 671-672 (2005).

comisionado especial para establecer las cantidades adeudadas.

A su entender, erró el foro sentenciador, además, al anotarle la rebeldía como sanción. Ello obedece a que problemas de contratación con su anterior representación legal "resultó en que no se atendieran ciertos aspectos del litigio con la premura necesaria." Sin embargo, el caso "nunca se encontró en un estado de abandono o dejadez." Así pues, "nunca hubo atrasos significativos, gastos excesivamente onerosos o daños irreparables al desarrollo del caso." Por el contrario, procede dejar sin efecto la rebeldía porque tiene una buena defensa en los méritos, a saber: 1) falta de perfeccionamiento de los contratos y 2) ausencia de prueba de varias de las facturas reclamadas.

Conviene añadir que, para el apelante, el foro sentenciador incidió al resolver sumariamente la reclamación. Ello obedece, a que existe controversia sobre la validez de los contratos, la cantidad adeudada y respecto a si la deuda está vencida, es líquida y exigible.

Como fundamento adicional, MSJ arguye que los contratos son nulos, porque contrario a las normas de contratación gubernamental aplicables, no incluyen las certificaciones requeridas y son de carácter retroactivo.

Finalmente, el apelante alega que la moción de sentencia sumaria de Premier es improcedente porque se apoya en prueba inadmisible en evidencia.

Por su parte, Premier aduce que el apelante actuó contra sus propios actos porque "en pos de la economía

procesal del caso," solicitó y obtuvo del TPI la abstención de nombrar un comisionado especial. En su lugar, pidió al foro primario que atendiera la petición de despacho sumario porque ello "podría dar por concluidas las controversias del caso."

De todos modos, el apelado entiende que era improcedente nombrar a un comisionado especial porque obra en el expediente la prueba necesaria para resolver la controversia sumariamente.

Además, para Premier, procede mantener en rebeldía, impuesta al apelante en el 2018, porque este, de forma reiterada, incumplió con las órdenes y resoluciones del TPI.

Sostiene, además, que como MSJ está en rebeldía no puede presentar prueba para impugnar los méritos de la demanda o apoyar sus defensas. Por tal razón, como cuestión de hecho y de derecho, los señalamientos sobre la validez de los contratos y de las facturas son improcedentes. En todo caso, la validez de aquellos fue admitida por MSJ temprano en el pleito, ya que estipuló la existencia de los contratos y su debida registración en la Oficina del Contralor.

Finalmente, Premier asegura que cualquier impugnación a la sentencia sumaria es inconsecuente, porque cumplió cabalmente con los requisitos de la Regla 36 de Procedimiento Civil, mientras que el apelante no se opuso a la moción de sentencia sumaria conforme a los parámetros de nuestro ordenamiento procesal civil.

Conforme a la normativa previamente expuesta, procede revisar *de novo* la totalidad del expediente,

ello de la forma más favorable a la parte que se opone al despacho sumario, en nuestro caso, MSJ.

Nuestro examen independiente del expediente revela que la *Moción de Sentencia Sumaria de Premier Computer, Inc.*, cumple cabalmente con la Regla 36.3 (a)(1-6) de Procedimiento Civil. Veamos.

Para comenzar, contiene una exposición breve de las alegaciones de las partes; de los asuntos litigiosos; de la causa de acción que se solicita en sentencia sumaria y una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales sobre los cuales Premier alega no hay controversia sustancial; con indicación de los párrafos, de las facturas en que apoya su contención y de las citas de las deposiciones en las que fundamenta parcialmente sus alegaciones.[53]

En su moción de sentencia sumaria Premier presenta claramente las razones por las cuales se debe dictar sentencia sumariamente a su favor, argumenta el derecho que a su entender es aplicable y solicita el remedio que debe ser concedido.[54]

En cambio, MSJ incumplió con la mayoría de los requisitos exigidos para oponerse a una moción de sentencia sumaria en nuestro ordenamiento civil procesal.

Así pues, no expuso brevemente las alegaciones de las partes[55] y tampoco incorporó en su escrito la causa

---

[53] Regla 36.3(a)(1)-(4) de Procedimiento Civil de 2009 (32 LPRA Ap. V).
[54] Regla 36.3(a)(5)-(6) de Procedimiento Civil de 2009 (32 LPRA Ap. V).
[55] Regla 36.3(a)(1) de Procedimiento Civil de 2009 (32 LPRA Ap. V).

de acción o reclamación respecto a la cual se solicita la sentencia sumaria.[56]

Tampoco indicó los párrafos o las páginas de las declaraciones juradas o la prueba admisible en evidencia que permite controvertir los hechos propuestos por Premier.[57] Por el contrario, el apelante hizo lo que la Regla 36 dispone que no se debe hacer, a saber: "descansar previamente en las aseveraciones contenidas en sus alegaciones". Por tal razón, la "oposición" de MSJ está repleta de alegaciones, "conclusorias", e insustanciales, incapaces de constituir una oposición procesalmente válida a la moción de sentencia sumaria de Premier.

Establecido que el apelante no se opuso a la moción de sentencia sumaria conforme a los parámetros de la Regla 36 de Procedimiento Civil, debemos determinar si existen hechos en controversia que impidan la adjudicación sumaria de la reclamación de cobro de dinero ante nos.

Luego de revisar paciente y cuidadosamente las 7,705 páginas que componen el Apéndice del recurso y el expediente completo del caso de epígrafe, concluimos que no existen hechos en controversia. Por tal razón, procede revisar *de novo* si el TPI aplicó correctamente el derecho a la controversia y determinamos, que sí lo hizo. Fundamentemos nuestra conclusión.

En primer lugar, quedó establecido que "[n]o hubo problemas de incumplimiento de contrato por parte de

---

[56] Regla 36.3(3) de Procedimiento Civil de 2009 (32 LPRA Ap. V).
[57] Regla 36.3(4) de Procedimiento Civil (32 LPRA Ap. V).

Premier".[58] De modo que, "el Municipio de San Juan no dejó de cobrar cantidades algunas por negligencia de Premier".[59] Así pues, "Premier no incurrió en incumplimiento de contrato con el Municipio de San Juan".[60]

En segundo lugar, también, es un hecho incontrovertido que las facturas en controversia fueron pre intervenidas,[61] recibidas y ajustadas[62], es decir, "[h]ubo una reconciliación de factura a factura por las partes"[63].

De lo anterior es razonable concluir que la deuda entre Premier y MSJ es válida;[64] es líquida, es decir, el monto adeudado es cierto y determinado;[65] no se ha pagado;[66] que Premier es el acreedor[67] y que MSJ es su deudor[68].

No obstante lo anterior, el apelante solicita que se deje sin efecto la rebeldía. Este planteamiento presenta, al menos, dos dificultades.

En primer lugar, es tardío. La anotación de rebeldía data de 31 de julio de 2018 y advino final y

---

[58] Apéndice del apelado, pág. 384 (Hecho no controvertido #42 en la Sentencia Sumaria de Premier, Transcripción de la Deposición, en adelante TD, de la Sra. Nixa Rivera Rodríguez, págs. 47-50 y 63-66). Véase, además, TD de la Sra. Maritza Vega, págs. 33-35.
[59] *Id.*, pág. 385 (Hecho no controvertido #53 en la Sentencia Sumaria de Premier, TD de la Sra. Maritza Vega, págs. 31-35). Véase, además, TD de la Sra. Nixa Rivera Rodríguez, págs. 33-38 y 57.
[60] *Id.*, pág. 385 (Hecho no controvertido #54 en la Sentencia Sumaria de Premier, TD de la Sra. Maritza Vega, págs. 31-35). Véase, además, TD de la Sra. Nixa Rivera Rodríguez, págs. 33-38, 47-50 y 63-66.
[61] *Id.*, pág. 384 (Hecho no controvertido #43 en la Sentencia Sumaria de Premier, TD de la Sra. Nixa Rivera Rodríguez, págs. 45-47).
[62] *Id.*, págs. 405-406 (Hechos no controvertidos #88-91 en la Sentencia Sumaria de Premier).
[63] *Id.*, pág. 388 (Hecho no controvertido #82 en la Sentencia Sumaria de Premier, TD del Sr. Jorge Peña Antonmarchi, págs. 61-63, 66 y 75). "La tabla con las facturas presentadas por Premier que sumaban los $6.5 millones, fue revisada por el señor Peña Antonmarchi a modo de preparación para la contestación a interrogatorio. Hubo una reconciliación de factura a factura".
[64] *General Electric v. Concessionaires, Inc.*, *supra.*
[65] *Ramos y otros v. Colón y otros*, *supra.*
[66] *General Electric v. Concessionaires, Inc.*, *supra.*
[67] *Id.*
[68] *Id.*

firme desde el 12 de abril de 2019, fecha en la que el TSPR declinó revisar la denegatoria de la expedición del auto en el caso KLCE201801258. Por ende, en la etapa en que se encuentra el litigio de epígrafe es un dictamen judicial final y firme, que constituye la ley del caso.[69]

A esto hay que añadir, que luego de examinar el abultado expediente del presente caso, no hay circunstancia alguna que justifique emplear una norma diferente.[70] Sobre el particular, es conveniente destacar que la conducta procesal de MSJ en el presente pleito se caracterizó por un patrón de incumplimiento con el descubrimiento de prueba, consistente en desobedecer las órdenes del TPI en la incomparecencia a vistas y deposiciones.[71]

En segundo lugar, el apelante no tiene una buena defensa en sus méritos. Distinto a su opinión, la prueba documental no controvertida fundamenta la reclamación de cobro de dinero de Premier.

En tercer lugar, las impugnaciones a la validez de los contratos son inconsecuentes. Esto es así, porque desde una etapa temprana en el pleito, específicamente, el 25 de febrero de 2016, MSJ reconoció la validez de los contratos entre las partes. Además, en su condición de rebelde, el apelante no tiene facultad para invocar fundamentos de derecho contra Premier. Como se sabe, la parte a la que se le anota la rebeldía "renunció a presentar prueba contra las alegaciones de la demanda y a

---

[69] *Cacho Pérez v. Hatton Gotay y otros*, 195 DPR 1, 8 (2016).
[70] *Rivera Robles v. Insurance Company of Puerto Rico*, 103 DPR 91, 94-95 (1974).
[71] Sobre el particular, véase, KLCE201801258.

levantar sus defensas afirmativas…".[72] Conviene destacar que los planteamientos sobre los defectos de los contratos fueron rechazados de plano por el TPI y dicha determinación advino final y firme a principios de marzo de 2022.[73]

Para terminar, el señalamiento de error relacionado con la no designación de un comisionado especial es doblemente improcedente. Como surge inequívocamente del expediente, la tramitación del caso por la vía sumaria se hizo, en ánimo de promover la economía procesal, a solicitud de MSJ. No puede ahora "obrar contra sus propios actos".[74] A esto hay que añadir, que dicha determinación no ha causado perjuicio alguno al apelante. Así pues, ha tenido por años la prueba a su disposición, se ha conducido un extenso descubrimiento de prueba y ha litigado vigorosamente su posición acudiendo ante este tribunal intermedio, al menos en cuatro ocasiones.

## -IV-

Por los fundamentos que anteceden, se confirma la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones. El Juez Ronda Del Toro disiente sin voto escrito.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[72] *Rodríguez v. Tribunal Superior*, 102 DPR 290, 294 (1974). (Citas omitidas).
[73] Véase, KLCE202200258.
[74] *Domenech v. Integration Corp. et al*., 187 DPR 595, 621 (2013).